JOEL A. GOLDMAN, SBN 41367
  *JGoldman@ClarkTrev.com*
CLARK & TREVITHICK
800 Wilshire Blvd., 12th Floor
Los Angeles, California 90017
Telephone: (213) 629-5700
Facsimile: (213) 624-9441

Attorneys for Defendant Raymer Metals, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JEANELLE JONES,<br><br>       Plaintiff,<br><br>     vs.<br><br>RAYMER METALS,<br><br>       Defendant. | CASE NO. 2:17-cv-00546-BRO-MRW<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT RAYMER METALS, INC. TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   June 5, 2017<br>Time:  1:30 p.m.<br>Crtrm.: 7C<br><br>Assigned to Hon. Beverly Reid O'Connell<br><br>Trial Date:    None Set |

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 5, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Beverly Reid O'Connell, located in the United States Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendant Raymer Metals, Inc. ("Raymer") will and hereby does move this Court to dismiss the action pursuant to paragraphs (b)(1), b(2) and b(7) of Rule 12 of the Federal Rules of Civil procedure.

This Motion is based on this Notice of Motion, the attached Memorandum of

2121118.1 (17917.001)

Points and Authorities, the Request for Judicial Notice and attachments filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This Motion is made following the conferences of counsel pursuant to L.R. 7-3 which took place on February 27, 2017, March 8, 2017, March 14, 2017, March 17, 2017, and March 20, 2017, in which all of the foregoing matters were discussed via telephone and/or electronic mail. Plaintiff declined to dismiss or amend said Complaint to avoid unnecessary motion practice, leaving Defendant no choice but to proceed with this Motion.

DATED:  April 4,  2017                    Respectfully submitted,

                                          CLARK & TREVITHICK


                                          By: _____/s/ Joel A. Goldman_____
                                               Joel A. Goldman
                                               Attorneys for Defendant Raymer Metals, Inc.

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.      INTRODUCTION.................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY................................................ 3

III.    LEGAL STANDARD ............................................................................... 5

IV.     LEGAL ARGUMENT .............................................................................. 7

        A.   As A Threshold Matter, Plaintiff Has Failed To Properly Plead
             Its Standing To Bring This Action........................................... 7

        B.   The Notice Fails to Provide Adequate Notice of the Alleged
             Violation........................................................................ 9

        C.   The Complaint and Notice Allege Violations That Are Wholly
             Past And Cannot Form The Basis For A Citizen Suit .......................... 11

        D.   The Complaint is Improperly Predicated on the Misclassification
             of Defendant As a Cement Manufacturer and Misapplies the
             Requirements of the Permit that Governs Cement Manufacturers....... 12

        E.   Plaintiff's Complaint Should Be Dismissed Without Leave To
             Amend .......................................................................... 15

V.      CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Wright*, 468 U.S. 737 (1984). ...................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ...................................................................5

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir. 1988) ...........................16

*Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007 ...........................................................5

*Cal. Sportfishing Prot. Alliance v. Diablo Grande, Inc.*, 209 F.Supp. 2d 1059 (E.D. Cal. 2002). ...............................................11

*Canales v. City of Alviso*, 3 Cal. 3d 118, 474 P.2d 417, (1970) ...............................16

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .............7

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 560 F.3d 903 (9th Cir. 2009) .............................................................9

*Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) ...................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...............................................................8

*Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49 (1987) ...............11

*Hallstrom v. Tillamook Cnty.*, 493 U.S. 20 (1989) ...........................................9

*Knievel v. ESPN,* 393 F.3d 1068 (9th Cir. 2005). ...........................................6

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010). ...............................7

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ...............................................15

*McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870 (9th Cir. 2011) ...............................................................8

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ...................................7

*Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2013) ........8

*Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817 (9th Cir. 2002) ...............................................................7

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) ...................6

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ...........................6

clark
trevithick

*Washington Trout v. McCain Foods*, 45 F.3d 1351 (9th Cir. 1995) ...........................9

*Wilbur v. Locke,* 423 F.3d 1101 (9th Cir. 2005)....................................................7, 15

## STATUTES

Federal Water Pollution Act ("Clean Water Act") 33 U.S.C. § 1251, *et seq.*.....passim

U.S. Const. Art. III..................................................................................................7, 8

## OTHER AUTHORITIES

Standard Industrial Classification Manual 1987, Executive Office of The
President, Office of Management and Budget ...................................................2

## RULES

Code of Federal Regulations

    40 C.F.R. § 135.........................................................................................9

Federal Rules of Civil Procedure

    Rule 12........................................................................................................1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant RAYMER METALS, INC. ("Defendant" or "Raymer") hereby submits its Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiff JEANELLE JONES' ("Plaintiff or "Jones") Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to paragraphs (b)(1), (b)(6) and (b)(7) of Rule 12 of the Federal Rules of Civil Procedure.

## I.

## INTRODUCTION

Plaintiff has filed this action in an attempt to allege that the defendant violated the Clean Water Act, as it pertains to stormwater discharge.  In California the permit governing the discharge of storm water from industrial facilities is the General Permit for Storm Water Discharges Associated with Industrial Activities, Order 2014-0057-DWQ, adopted by the State Water Resources Control Board on April 1, 2014 and effective July 1, 2015 (hereinafter referred to as the "Current Industrial Stormwater Permit"), Ex. 4 to RJN. In order for an industrial facility to discharge storm water in California they must seek coverage under the Current Industrial Stormwater Permit.

The Multi-Sector General Permit for Stormwater Discharges Associated With Industrial Activity, commonly referred to as the 2008 Multi-Sector Permit, is the governing permit for facilities operating in states that have not elected to issue their own General Permit.  California has elected to issue its own General Permit.  Ex. 3 to RJN.  Indeed, as alleged in Paragraph 31 of the Complaint, the Current Industrial Stormwater Permit is an NPDES permit issued pursuant to the Clean Water Act, section 402(p), 33 U.S.C. § 1342(p).

The Current Industrial Stormwater Permit and the 2008 Multi-Sector Permit are different in myriad ways, yet similar in others.  One example of how they differ

1   is that the 2008 Multi-Sector Permit requires facilities operating under Standard

2   Industrial Classification (SIC) Code 5093 to analyze their storm water samples for

3   copper, while California's Current Industrial Stormwater Permit does not.  One

4   example of how they are similar is that they each recognize that exceeding a

5   benchmark value, in the case of the 2008 Multi-Sector Permit, or exceeding a

6   Numeric Action Level (NAL), in the case of California's Current Industrial

7   Stormwater Permit, are not violations of each respective permit. 2008 Multi-Sector

8   Permit, Section 6.2.1; Current Industrial Stormwater Permit, Section I.M.63.

9           Defendant is a metal recycler operating under Standard Industrial

10  Classification (SIC) Code 5093.  SIC Code 5093 consists of establishments

11  primarily engaged in assembling, breaking up, sorting, and wholesale distribution of

12  scrap and waste materials.[1]  (Complaint, ¶ 14).

13          Through approximately 16 of its 25 pages, Plaintiff's Complaint goes to great

14  lengths to explain the intricacies of water pollution law to the Court. But a close

15  reading reveals that Plaintiff's Complaint is severely flawed.  Initally, Plaintiff's

16  Complaint fails to adequately assert what gives Plaintiff standing to sue Defendant

17  pursuant to the Clean Water Act.

18          In addition, by pleading a mountain of vague allegations and legalese,

19  Plaintiff attempts to distract the Court from the fact that the Plaintiff has not cited

20  any basis consistent with California's Current Industrial Stormwater Permit or the

21  Defendant's permit requirements that constitute violations of the Clean Water Act

22  for the alleged exceedances of the NALs listed in the Current Industrial Stormwater

23  Permit or the benchmark values in the 2008 Multi-Sector Permit. The reason the

24  Plaintiff's allegations are without merit is simply because when one looks at the

25

26  [1] Standard Industrial Classification Manual 1987, Executive Office of The President,
    Office of Management and Budget, Page 301.  *See also*,
27  http://www.waterboards.ca.gov/water_issues/programs/stormwater/docs/industrial/si
    c_manual_1987.pdf
28

clark
trevithick

1  documents they are most likely drawn from, it is clear they do not apply to this

2  Defendant's industrial sector, which is governed by different and far less stringent

3  requirements. Plaintiff's Complaint also includes numerous allegations which

4  Plaintiff failed to give proper notice of and which this Court lacks jurisdiction over.

5  ## II.

6  ## FACTUAL AND PROCEDURAL HISTORY

7  In the Complaint, Plaintiff contends that he or she is an individual and citizen

8  of the State of California (Complaint, p. 3-4, ¶¶ 9-14); that Plaintiff, like other

9  citizens, taxpayers, property owners and residents of his community, lives, works

10  and travels near, and recreates in the Los Angeles River, it's tributaries, and the

11  overall Los Angeles River Watershed, into which Defendant discharged pollutants,

12  etc.  (Complaint, p. 4, ¶ 10).  Thereafter, Plaintiff alleges that Defendant is an

13  owner/operator of a facility located at 15135 Raymer Street, Van Nuys, California

14  91405.  (Complaint, p. 4, ¶¶ 11-14).  Plaintiff further alleges that the facility is listed

15  as operating under SIC Code 5093, related to Scrap and Waste Materials; that

16  Defendant applied for coverage under the California Industrial General Permit on

17  February 14, 2014 and was issued WDID Number 4191024688; and that defendant

18  further reapplied for coverage under the 2015 Industrial Stormwater Permit on

19  March 4, 2015 and was granted continued use of the previously issued WDID

20  Number (Complaint, p. 4, ¶¶ 11-14).  Commencing at Paragraph 60 of the

21  Complaint, Plaintiff then lists fifteen activities that they allege are violations of the

22  Clean Water Act.  Plaintiff pleads four Causes of Action, to wit: (1) Discharges in

23  Violation of Permit Prohibitions of the Industrial Stormwater Permit (Violations of

24  33 U.S.C. §§ 1311, 1342); (2) Discharge in Violation of Effluent Limitations of the

25  Industrial Stormwater Permit (Violations of 33 U.S.C. §§ 1311, 1342); (3) Failure to

26  Develop and Implement an Adequate Storm Water Pollution Prevention Plan, In

27  Violation of the Industrial Stormwater Permit (Violations of 33 U.S.C. § 1311,

28

clark
trevithick

1   1342); and (4) Failure to Develop and Implement an Adequate Monitoring and

2   Reporting Program, In Violation of the Industrial Stormwater Permit (Violations of

3   33 U.S.C. §§ 1311).

4        As it relates to the Industrial Stormwater Permit upon which this action is

5   based, Plaintiff alleges at ¶30:

6            "In California, the State Board has elected to issue a

7            single, statewide general permit applicable to all

8            stormwater discharges associated with industrial activity.

9            On April 17, 1997, the State Board adopted the 1997

10           Permit, which was in effect through June 30, 2015. On

11           July 1, 2015, the 2015 Permit became effective and

12           superseded the 1997 Permit, except for enforcement

13           purposes.  To discharge stormwater lawfully in California,

14           industrial dischargers must secure coverage under the

15           Industrial Stormwater Permit and comply with its terms or

16           obtain and comply with an individual NPDES permit.

17           1997 Permit, p. II; 2015 Permit, Section I(A)(Findings 8,

18           12)."

19  (Complaint, ¶ 30).

20           The Industrial Stormwater Permit is an NPDES permit

21           issued pursuant to CWA section 402(p), 33 U.S.C. §

22           1342(p). Violations of the Industrial Stormwater Permit

23           are also violations of the CWA. 1997 Permit, Section

24           C(1); 2015 Permit, Section XXI(A).

25  (Complaint, ¶ 31).

26       Furthermore, at Paragraph 46 of the Complaint, Plaintiff improperly alleges

27  that Defendant falls under the Cement Manufacturing Point Source category.

28

2121118.1 (17917.001)

4

NOTICE OF MOTION AND MOTION OF DEFENDANT RAYMER METALS, INC. TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

1        However, as alleged in Paragraph 14 of the Complaint, Defendant admittedly

2  operates under SIC Code 5093, relating to Scrap and Waste Materials. Facilities

3  operating under SIC Code 5093 are not subject to the more stringent requirements

4  that are imposed on a cement manufacturer.  Put simply, the Complaint is based

5  upon alleged violations against a cement manufacturer that are not relevant to

6  Defendant's permit as a Scrap and Waste Materials recycler.

7        Plaintiff sent Defendant a pre-litigation notice ("Notice") as required by the

8  Clean Water Act on October 14, 2016.  On November 22, 2016, Raymer sent

9  Plaintiff its response to the Notice.  (Ex. 1 to RJN.) After 60 days, Plaintiff initiated

10  this action by filing its Complaint on January 23, 2017, and Defendant accepted

11  service.

12

**III.**

13

**LEGAL STANDARD**

14        The Supreme Court has stated the current standard for Rule 12(b)(6) motions

15  to dismiss as follows: "To survive a motion to dismiss, a complaint must contain

16  sufficient factual matter, accepted as true, to state a claim to relief that is plausible

17  on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed.

18  2d 868 (2009) (internal quotation marks omitted). The factual allegations supporting

19  each claim "must be enough to raise a right to relief above the speculative level."

20  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

21  (2007) (abrogating "the rule that a complaint should not be dismissed . . . unless it

22  appears beyond a doubt that the plaintiff can prove no set of facts in support of his

23  claim which would entitle him to relief").  Allegations "merely consistent with"

24  unlawful conduct do not state a claim in the absence of facts "show[ing] that the

25  pleader is entitled to relief." *Id*. at 557, see also id. at 556 n.3 (Rule 8(a)(2) "requires

26  a 'showing,' rather than a blanket assertion, of entitlement to relief"). Plaintiffs

27  cannot simply plead a laundry list of elements, for "a formulaic recitation of the

28

clark
trevithick

1  elements of a cause of action will not do." *Id*. at 555. "[T]he tenet that a court must
2  accept as true all of the allegations contained in a complaint is inapplicable to legal
3  conclusions." *Ashcroft*, 556 U.S. at 663. "While legal conclusions can provide the
4  framework of a complaint, they must be supported by factual allegations." *Id*. at
5  664. "[O]nly a complaint that states a plausible claim for relief survives a motion to
6  dismiss . . . . But where the well-pleaded facts do not permit the court to infer more
7  than the mere possibility of misconduct, the complaint has alleged—but has not
8  'show[n]'—that the pleader is entitled to relief." *Id*.

9       In analyzing whether Plaintiff has pleaded a plausible claim, the court "need
10  not . . . accept as true allegations that contradict matters properly subject to judicial
11  notice or by exhibit . . . [n]or . . . allegations that are merely conclusory,
12  unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden*
13  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on other grounds, 275
14  F.3d 1187 (9th Cir. 2001). In addition, "a court may take judicial notice of matters
15  of public record without converting a motion to dismiss into a motion for summary
16  judgment," such as filings in another court in another action.  *Skilstaf, Inc. v. CVS*
17  *Caremark Corp*., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (taking judicial notice of
18  filings in federal district court for Massachusetts). A court can also take judicial
19  notice of documents which are attached to a motion to dismiss (but were not
20  attached to the complaint) where (1) the contents of such documents are specifically
21  alleged in the complaint or (2) plaintiff's claims depend upon the contents of such
22  documents, even though such contents were not specifically alleged in the
23  complaint.  *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).  As Defendant
24  will show, in light of such judicially noticeable documents, Plaintiff cannot meet the
25  standards of either *Twombly* or *Iqbal.*
26  / / /
27  / / /
28

# IV.

## <u>LEGAL ARGUMENT</u>

### A.    As A Threshold Matter, Plaintiff Has Failed To Properly Plead Its Standing To Bring This Action

Standing is a jurisdictional requirement that precedes analysis of the merits. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). A plaintiff who seeks to invoke the jurisdiction of the federal courts has the burden of alleging specific facts sufficient to establish standing, and a federal court "is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817 (9th Cir. 2002). The plaintiff bears the burden of establishing standing at each and every stage of the litigation. *Krottner*, 628 F.3d at 1141. A plaintiff is required to establish "'standing for each claim he seeks to press' and 'for each form of relief that is sought.' " *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724 (2008). This analysis requires "careful judicial examination of a complaint's allegations." *Allen v. Wright*, 468 U.S. 737, 752 (1984). Under the current *Twombly/Iqbal* system, the plaintiff must plead nonconclusory factual allegations which, together with reasonable inferences based on those allegations, plausibly suggest the existence of plaintiff's standing. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); see also *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  Standing must exist as of the date of filing of the complaint (in this case, January 23, 2017) and cannot be retroactively created by events occurring after that date. *Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005), abrogated on other grounds by *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).  Both include a constitutional dimension based on the constitutional requirement that federal courts can hear only cases and controversies (U.S. Const. art. III, § 2, cl. 1), and a prudential dimension based on the general principle that a litigant must assert his own interests and not those of

1  third parties.  *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 878

2  (9th Cir. 2011).

3     Generally, to establish Article III standing, a claimant "must show (1) it has

4  suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

5  imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

6  challenged action of the defendant; and (3) it is likely, as opposed to merely

7  speculative, that the injury will be redressed by a favorable decision." *Friends of*

8  *the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

9     To establish causation, a plaintiff must demonstrate that the injury is "fairly ...

10  traceable to the challenged action of the defendant, and not ... the result of the

11  independent action of some third party not before the court." *Native Village of*

12  *Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2013) (citations and

13  quotations omitted). "The line of causation between the defendant's action and the

14  plaintiffs harm must be more than attenuated." *Id.*

15     Here, Jones' Notice also provides only general, conclusory, and vague

16  statements indicating that Jones is "concerned with the environmental health of the

17  Los Angeles River, and uses and enjoys the waters of the Los Angeles River, its

18  inflows, and other areas of the overall Los Angeles River Watershed." The notice

19  also indicates that Jones "acts in the interest of the general public to prevent

20  pollution in these waterways, for the benefit of their ecosystems, and for the benefits

21  of all individuals and communities who use these waterways for various

22  recreational, educational, and spiritual purposes." However, there are no factual

23  allegations to any actual harm Jones may have suffered. There are also no

24  allegations to explain how any alleged harm suffered by Jones was caused by

25  Raymer's alleged violations. Thus, because the Notice and Complaint both fail to

26  provide factual allegations to establish the required causal link, Jones has failed to

27  establish standing sufficient to pursue claims against Raymer.

28

1    The deficiency in the Complaint is exacerbated when Jones, in her Notice,

2    states that she resides in Inglewood and Raymer is located in

3    V[Party][Party/'s/'s/'s/s'] [Motion] came on for hearing before this Court on [Date],

4    at [Time].  After full consideration of the matter, this Court finds as follows:

5    _____

6    IT IS THEREFORE ORDERED that _____.

7

8    Dated:   _____          _____

9                                              Hon. [Judge]
                                                Judge of the Superior CourtJudge, United
                                                States District Court
10

11    an Nuys.  This is a distance of approximately twenty miles and the sites are

12    separated by the Santa Monica Mountains.

13    **B.      The Notice Fails to Provide Adequate Notice of the Alleged**

14    **        Violation**

15    Under the Clean Water Act, a citizen suit may only be brought after providing

16    adequate 60-day notice of intent to sue. 33 U.S.C. § 1365(b)(1)(A).  Absent such

17    notice, a "district court must dismiss the action as barred by the terms of the statute."

18    *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 33 (1989).  The 60-day notice must

19    "include sufficient information to permit the recipient to identify the specific

20    standard, limitation, or order alleged to have been violated, the activity alleged to

21    constitute a violation, the person or persons responsible for the alleged violation, the

22    location of the alleged violation, the date or dates of such violation, and the full

23    name, address, and telephone number of the person giving notice." 40 C.F.R. §

24    135.3.

25    The requirement to provide adequate notice is strictly construed.  *Washington*

26    *Trout v. McCain Foods*, 45 F.3d 1351, 1354 (9th Cir. 1995) (citing *Hallstrom v.*

27    *Tillamook*, 493 U.S. 20, 107 (1989).  "[E]ven at its most lenient we have never

28    abandoned the requirement that there be a true notice that tells a target precisely

clark
trevithick

1   what it allegedly did wrong, and when.  The target is not required to play a guessing

2   game in that respect."  *Ctr. for Biological Diversity v. Marina Point Dev. Co*., 560

3   F.3d 903, 911 (9th Cir. 2009).  The underlying purpose to providing such notice "is

4   to accomplish corrections where needed without the necessity of a citizen action."

5   Id. at 910. Such is not to be construed as a mere "annoying piece of paper intended

6   as a stumbling block for people who want to sue." *Id*.

7           Here, even if the claims in the Notice were not plainly rebutted by the

8   documents and facts set forth below, the Notice would be insufficient for purposes

9   of the Clean Water Act.  The Notice sets forth a number of general and conclusory

10  claims based on the erroneous contention that Raymer has not met the requirements

11  of the Former and Current Industrial Stormwater Permits and that it failed to

12  implement a Storm Water Pollution Prevention Plan. No factual support whatsoever

13  is provided, which is unsurprising given that the allegations are all baseless.

14          Plaintiff's Notice contained many inaccurate and misleading statements and

15  did not include sufficient and accurate information to allow Defendant to identify

16  the specific standard, limitation, or order alleged to have been violated, nor the

17  activity alleged to constitute a violation.  Some of the more prominent inaccuracies

18  include the following: (1) that Defendant's facility falls within one of several

19  industrial categories, commonly referred to as Subchapter N categories, and is

20  required to comply with the effluent limitations proscribed for Subchapter N

21  facilities in the 2008 Multi-Sector General Permit (Section II.A of the Notice); (2)

22  that Defendant is required to analyze its storm water samples for copper (Section

23  II.A of the Notice); (3) that Defendant is required to be within numerical effluent

24  limitations set forth in the 2008 Multi-Sector General Permit (Section II.A of the

25  Notice); and (4) that the Former Industrial Stormwater Permit "states that any

26  discharge from an industrial facility not in compliance with the Industrial

27  Stormwater Permit 'must be either eliminated or permitted by a separate NPDES

28

1  permit.'" (Section III.E of the Notice). Furthermore, Plaintiff's Notice intimates that

2  exceedances of benchmark values are violations of the 2008 Multi-Sector General

3  Permit, the Former and Current Industrial Stormwater Permits, and the Clean Water

4  Act.

5      The Notice strongly suggests that Plaintiff not only failed to perform a

6  diligent investigation before sending the Notice, but that the Plaintiff believes that

7  Defendant is somehow required to comply with the 2008 Multi-Sector Permit and

8  California's Industrial Stormwater Permit.  The Notice also suggests that Plaintiff

9  has failed to properly interpret the requirements of California's Industrial

10  Stormwater Permit.  This is inadequate in light of the strict standard established for

11  such notices.  Raymer is not required to play a "guessing game" as to the nature of

12  the alleged violation and is entitled to a sufficiently detailed (and accurate) notice

13  such that it is afforded "an opportunity to bring itself into complete compliance with

14  the [Clean Water] Act and thus likewise render unnecessary a citizen suit."

15  *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987).

16  Accordingly, the Notice cannot form the basis of a citizen suit.  Moreover, on

17  November 22, 2016, Raymer rebutted the claims in Plaintiff's Notice.  Such rebuttal

18  was to no avail because Jones' Complaint contains the same defects and allegations

19  as the Notice

20  **C.    The Complaint and Notice Allege Violations That Are Wholly Past**

21  **And Cannot Form The Basis For A Citizen Suit**

22      The Clean Water Act does not authorize citizen suits to seek redress for

23  violations of the Clean Water Act that are wholly past.  *Gwaltney*, 484 U.S. at 64.

24  Thus, plaintiffs pursuing citizen suits must allege in good faith that there exist

25  continuous or intermittent violations. Id. Such ongoing violations may be shown

26  either "(1) by proving violations that continue on or after the date the complaint is

27  filed, or (2) by adducing evidence from which a reasonable trier of fact could find a

28

1  continuing likelihood of a recurrence in intermittent or sporadic violations." *Cal.*

2  *Sportfishing Prot. Alliance v. Diablo Grande, Inc*., 209 F.Supp. 2d 1059, 1065-1066

3  (E.D. Cal. 2002).

4       As indicated in the Complaint and Notice, the State Water Board reissued the

5  Industrial Stormwater Permit, effective July 1, 2015.  The Current Industrial

6  Stormwater Permit includes significant changes to the permitting, monitoring, and

7  reporting processes for stormwater discharges. Among other things, the Current

8  Industrial Stormwater Permit substantively revises the criteria upon which

9  stormwater discharges are to be monitored and sampled. Thus, in light of the new

10  monitoring and sampling requirements, Defendant's alleged violations of the Former

11  Industrial Stormwater Permit could not continue past July 1, 2015, as the new

12  requirements came into effect. Accordingly, even if Plaintiff had sufficiently alleged

13  facially valid violations of the Former Industrial Stormwater Permit, Plaintiff cannot

14  allege that there exists an ongoing violation sufficient to bring a citizen suit against

15  Defendant, and the Notice is invalid for this reason.

16      **D.**    **The Complaint is Improperly Predicated on the Misclassification of**

17              **Defendant As a Cement Manufacturer and Misapplies the**

18              **Requirements of the Permit that Governs Cement Manufacturers**

19       The Notice and Complaint alleges that Raymer is subject to Effluent

20  Limitations Guidelines (ELGs) because it operates within one of the "several named

21  industrial categories" listed in the previous Industrial Stormwater Permit, what are

22  commonly referred to as Subchapter N facilities.  A list of the types of facilities

23  subject to ELGs can be found in Attachment F to California's Current Industrial

24  Stormwater Permit.

25       Subchapter N facilities are subject to more onerous requirements in the

26  Current Industrial Stormwater Permit.  For instance, as stated in Section V.B of the

27  Current Industrial Stormwater Permit, "Industrial storm water discharges from

28

clark
trevithick

1    facilities subject to storm water ELGs in Subchapter N shall not exceed those storm

2    water ELGs."  The Current Industrial Stormwater Permit does not hold facilities

3    operating under SIC Code 5093 to this requirement.

4         Paragraph 46 of the Complaint erroneously alleges that Defendant is a

5    Subchapter N facility and must comply with the effluent limitations proscribed by

6    the EPA.  Plaintiff also erroneously alleges that Defendant falls under the

7    Subchapter N Cement Manufacturing Point Source Category.

8         Contrary to Plaintiff's erroneous allegations, Defendant does not manufacture

9    cement, is not a Subchapter N facility, and is not subject to ELGs.  Indeed,

10   Defendant, as alleged in Paragraph 14 of the Complaint, operates under Standard

11   Industrial Classification (SIC) Code 5093.

12        Jones references the 2008 Multi-Sector General Permit in both her Notice and

13   Complaint.  Raymer is required to comply with California's Current Industrial

14   Stormwater Permit, not the 2008 Multi-Sector General Permit.  While there are

15   some similarities between California's Current Industrial Stormwater Permit and the

16   2008 Multi-Sector General Permit, there are also many significant differences.  An

17   example of the many differences is that the 2008 Multi-Sector General Permit

18   requires facilities operating under SIC code 5093 to analyze for copper, while

19   California's Current Industrial Stormwater Permit does not.  One example of how

20   the two permits are similar is that the Current Industrial Stormwater Permit states

21   that "annual NALs are established as the 2008 MSGP benchmark values." Current

22   Industrial Stormwater Permit, Section I.M.62. Another example of how the two

23   permits are similar is that they both recognize that exceedances of benchmark values

24   are not violations of each respective permit.

25        Section 6.2.1 of the 2008 Multi-Sector General Permit states

26              "This permit stipulates pollutant benchmark

27              concentrations that may be applicable to your discharge.

28

2121118.1 (17917.001)                                    13

NOTICE OF MOTION AND MOTION OF DEFENDANT RAYMER METALS, INC. TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

1  The benchmark concentrations are not effluent limitations;
2  a benchmark exceedance, therefore, is not a permit
3  violation. Benchmark monitoring data are primarily for
4  your use to determine the overall effectiveness of your
5  control measures and to assist you in knowing when
6  additional corrective action(s) may be necessary to comply
7  with the effluent limitations in Part 2."
8  Section I.M.63 of the Current Industrial Stormwater Permit states:
9  "The NALs are not intended to serve as technology-based
10 or water quality-based numeric effluent limitations.  The
11 NALs are not derived directly from either BAT/BCT
12 requirements or receiving water objectives.  NAL
13 exceedances defined in this General Permit are not, in and
14 of themselves, violations of this General Permit."
15 In addition to Section I.M.63 of the Current Industrial Stormwater Permit, the
16 Glossary for the Current Industrial Stormwater Permit , presented in Attachment C
17 to the Current Industrial Stormwater Permit, defines an NAL as follows:
18 Numeric Action Level (NAL)
19 "Pollutant concentration levels used to evaluate if best
20 management practices are effective and if additional
21 measures are necessary to control pollutants.  NALs are
22 not effluent limits.  The exceedance of an NAL is not a
23 permit violation."
24 Pursuant to Section XII of the Current Industrial Stormwater Permit, the
25 action Defendant was required to take as it relates to the alleged exceedances was to
26 perform, with the assistance of a Qualified Industrial Stormwater Practitioner, a
27 Level 1 Exceedance Response Action Evaluation, prepare and submit a Level 1
28

2121118.1 (17917.001)

14

1  Exceedance Response Action Report to the State Water Resources Control Board,

2  revise their Storm Water Pollution Prevention Plan as necessary, and implement any

3  additional BMPs identified in the Evaluation.  Defendant has performed each of

4  these actions.  A copy of the Exceedance Response Action Report was, in fact,

5  submitted and the Court has been requested to take judicial notice of same (*See* Ex.

6  5, RJN).  Such report is incorporated herein by reference for the Court's review.

7  Section 1.0 of the ERA Level 1 Evaluation Report states as follows:

8        "This Exceedance Response Action (ERA) Evaluation has

9        been prepared on behalf of Raymer Metals, Inc. due to the

10        exceedance of the Numeric Action Level (NAL) for the

11        NAL parameters listed in Section 5.0 below.  The purpose

12        of this ERA Evaluation is to assist the facility in

13        determining (1) the source areas contributing to the NAL

14        exceedance; (2) any additional BMPs and SWPPP

15        revisions necessary to prevent future NAL exceedances;

16        and (3) to comply with the requirements of the General

17        Permit."

18  (Exceedance and Response Action Level 1 Evaluation and Report, Dec. 30, 2016, p.

19  1., RJN Ex. 5).

20      Put simply, by meeting the requirements of the Current Industrial Stormwater

21  Permit once the facility entered Level 1 status, Defendant maintained compliance

22  with its permit and there is no basis, in fact or law, for the Complaint.

23     **E.**   **Plaintiff's Complaint Should Be Dismissed Without Leave To**

24        **Amend**

25      Plaintiff has no likelihood of prevailing on its claims, particularly with regard

26  to the critical issue of standing, which must exist as of the date the Complaint was

27  filed and cannot be retroactively cured.  *See Wilbur*, 423 F.3d at 1107),. Courts may

28

1  dismiss a case without leave to amend if the plaintiff is unable to cure the defect by

2  amendment. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). This is because

3  the Complaint is based on Plaintiff's improper Notice. Jones failed to cure the

4  errors in her Notice before filing her Complaint. Thus, any substantive amendment

5  to the Complaint would be beyond the scope of her Notice and thus prohibited.

6      The *Twombly/Iqbal* requirements and the requirement of standing are well

7  known, and Plaintiff could and should have pleaded them. The reasonable inference

8  is that Plaintiff has not, and cannot, make factual allegations which could possibly

9  avoid the inescapable fact that its entire action is barred by lack of standing. As

10  California's highest court has observed, the inexplicable silence on critical facts of

11  an "honest and therefore fearless claimant permits the inference that its tenor is

12  unfavorable to the party's cause." *Canales v. City of Alviso*, 3 Cal. 3d 118, 136, 474

13  P.2d 417, 425 (1970). Dismissal is proper where, as here, there is a lack of a

14  cognizable legal theory or the absence of sufficient facts alleged under a cognizable

15  legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988).

16  Thus, Plaintiff's Complaint should be dismissed without leave to amend.

17

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

2121118.1 (17917.001)
NOTICE OF MOTION AND MOTION OF DEFENDANT RAYMER METALS, INC. TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

clark
trevithick

# V.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint should be granted without leave to amend.

DATED:  April 4, 2017        Respectfully submitted,

CLARK & TREVITHICK

By:      /s/ Joel A. Goldman
        Joel A. Goldman
        Attorneys for Defendant Raymer Metals, Inc.